UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA WILLIAMS, etc. | ) | CASE NO. 5:13-cv-00661 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) ) | **ORDER AND DECISION** |
| JAMES NICE, et al. | ) ) | |
| Defendant. | ) ) | |

This matter is before the Court upon a motion for summary judgment filed by Defendants Chief James Nice and Officer Jon Morgan. Doc. 29. In their motion, Defendants seek summary judgment on the claims raised by Plaintiff Sandra Williams on behalf of her daughter T.W. Defendants claim that (1) they are entitled to qualified immunity on Williams's excessive force claim; (2) Williams has failed to prove a constitutional violation underlying municipal liability; (3) the Ohio constitution does not give rise to a private cause of action for damages relating to Williams's equal protection and cruel and unusual punishment claims; (4) Williams failed to demonstrate that Nice or Morgan acted willfully, wantonly, or recklessly; (5) Williams is unable to prove the common law elements of assault, false imprisonment, and infliction of emotional distress; and (6) Williams has no evidence to establish that a conspiracy occurred. The Court has been advised, having reviewed the parties' extensive briefing, exhibits, pleadings, and applicable law. For the reasons stated herein, Defendants' motion is GRANTED in part and DENIED in part.

I.   FACTS

In October 2012, T.W. enrolled in the eighth grade at Jennings Community Learning Center ("Jennings"), transferring from another Akron public school for alleged disciplinary reasons. At that time, Officer Morgan had been a School Resource Officer ("SRO") at Jennings for a couple of years. Akron police officers have been serving as SROs at community learning centers since 2010. However, it is not clear and the parties dispute what exactly a police officer SRO's official obligations are within the schools.

On October 26, 2012, T.W. was sent to the principal's office for violations of school rules and policies when she allegedly argued with another student in class. Both she and the other student were sent to the principal's office. After her meeting with Assistant Principal Michael Wilson, during which she was allegedly suspended, T.W. was admittedly upset and tore posters off of the school's walls. Morgan witnessed T.W.'s behavior and confronted her in a school stairwell. He claims that T.W.s' behavior "crossed the line to criminal disorderly conduct." During the confrontation, T.W. allegedly was defiant by putting one foot behind her and putting her hands on her hips. A video surveillance camera captured the latter part of Morgan's and T.W.'s meeting in which it appears that Morgan tried to restrain T.W. by leading her across a hallway and holding her arm behind her back while placing her face-first into a row of lockers. Video evidence shows several students walked by the encounter. After subduing T.W., Morgan led her down a hallway with her arms behind her back. It is unclear what Morgan and T.W. said to each other during the encounter. T.W. alleges that Morgan broke her upper arm while restraining her by physically lifting her off the ground by her arm. Morgan asserts that the technique he used to restrain T.W. was a low-level force tactic consistent with self-defense tactics taught by the Akron Police Department. In contrast, T.W. claims that this tactic was

2

excessive force which caused her injury.  Both parties agree that T.W.'s sister took her to the hospital shortly thereafter where she was diagnosed with a proximal humerus fracture, which she attributes to Morgan's self-defense tactics.  No criminal charges were filed.

Defendants filed their motion for summary judgment on December 16, 2013.  On January 17, 2014, Williams filed her response in opposition to Defendants' motion for summary judgment.  Defendants replied to Williams's response on February 3, 2014.  The Court now resolves the motion.

## II.    LEGAL STANDARD

### A. Summary Judgment.

Pursuant to Fed. R. Civ. P. 56, summary judgment should be granted if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if it is one that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens.  *Id*. at 252.  Further, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion."  *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The pivotal question in deciding on a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of the plaintiff.  *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute, and must do so by citing to the record. Fed. R. Civ. P. 56(c)(1)(a). "Conclusory and unsupported allegations, rooted in speculation," do not meet the nonmoving party's burden of proof. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003); *See also Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1274 (6th Cir. 1974).

### B.  § 1983 Excessive Force Claims.

Under the Court's review of a § 1983 claim alleging excessive force, it must consider "(1) whether the officer violated the constitution by using excessive force; and then (2) decide if the officer is protected by qualified immunity because he did not violate clearly established federal law." *Steele v. City of Cleveland*, 2009 WL 545320 at *4 (N.D. Ohio, 2009) (citing *Wysong v. City of Heath*, 260 Fed.Appx. 848, 854 (6th Cir. 2008)). These inquiries are distinct. *Saucier v. Katz*, 533 U.S. 194, 204 (2001).

### III.  LAW AND ANALYSIS

#### A.  Excessive Force Claims

. Defendants argue that they are entitled to qualified immunity on Williams's § 1983 claim for relief because Morgan's use of force was reasonable. In their argument, Defendants cite to *Graham*'s objective reasonableness test for excessive force cases under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). The *Graham* court laid out

three factors to consider in determining objective reasonableness: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect is actively resisting arrest. *Id.* The Sixth Circuit has also noted: "In addition, we have also found that 'the definition of reasonable force is partially dependent on the demeanor of the suspect.' *Minchella*, 2003 WL 21957034, at *3 (officers asserting that large plaintiff who refused to be arrested required more force)." *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 174 (6th Cir. 2004).

Addressing the first prong of the *Graham* test, it is debatable whether Williams committed any crime by effectively throwing a temper tantrum and tearing posters off of the school walls. Even if this Court were to conclude that T.W.'s behavior constituted criminal misconduct, the crime was not severe – at most amounting to a minor misdemeanor. Second, there was no one in the hallway with Williams from the time she began ripping papers from the walls up to the moment she was confronted by Morgan. Even when students began to walk through the hallways to change classes, per the video evidence, T.W. did not seem to pose any threat whatsoever to those students. Thus, a jury could conclude she was not a threat to others around her.

A review of the videotape also reveals that T.W. did not pose a threat to Morgan in any manner. In so analyzing this fact, the Court "must also consider the size and stature of the parties involved." *Id.* Herein, the videotape demonstrates the large discrepancy between the size of Morgan and T.W. This significant size discrepancy casts doubt upon Defendants' assertion that T.W. "displayed a defiant demeanor and assumed a confrontational position toward Officer Morgan" by placing her hand on her hip. In fact, a jury could conclude that this size discrepancy places the entire encounter in a different light.

5

Under the third prong, it is not entirely clear whether T.W.'s conduct constituted resisting arrest. Morgan asserts that the videotape removes any doubt around the fact that T.W. was being uncooperative. However, the extent of her alleged uncooperation is not clear from the videotape due to the fact that Morgan resorted to the use of force so quickly. This ambiguity is best resolved by a jury.

Qualified immunity will often operate "to protect officers from the sometimes 'hazy border between excessive and acceptable force.'" *Saucier*, 533 U.S. at 206 (citing *Priester v. Riviera Beach*, 208 F.3d 919, 926–27 (11th Cir. 2000)). An officer should be entitled to qualified immunity if he made an objectively reasonable mistake as to the amount of force that was necessary under the circumstances with which he was faced. *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002).

Under the facts as viewed in a light most favorable to T.W., the Court cannot find that Morgan's conduct, as a matter of law, falls into this "hazy border." Herein, Morgan was confronted in a school setting with an unruly student – a situation handled by *teachers* on a routine basis without the use of **any** force. At the time of their encounter, T.W. posed no threat to the safety of Morgan or any other students. Accordingly, a reasonable jury could conclude that Morgan did not use *reasonable* force to bring T.W. under control. First, Morgan did not simply use an arm-bar to restrain T.W. He forced T.W. up against a stationary object – the metal lockers- to add to the force used. Moreover, given the huge massive size discrepancy, Morgan physically lifted T.W. off the ground using the arm bar. This conduct, it would appear from the record, resulted in breaking T.W.'s arm.

Moreover, there appears to exist a genuine issue of fact surrounding the immediate aftermath of the arm-bar. T.W. claims that she immediately asked Morgan to let go of her arm

6

following the initial interaction because of the amount of pain she was in.  Morgan, however, maintained his grip on T.W.'s arm and in fact directed her down the school hallway using that grip.  Under those facts, a reasonable jury could conclude that such continued force was also gratuitous.  Accordingly, the Court declines to afford Morgan qualified immunity for his conduct.

To the extent that Williams seeks to assert this claim against Nice, it fails as a matter of law.  There is no evidence to suggest that Nice played any role in the underlying conduct of Morgan and § 1983 does impose supervisory liability.  Accordingly, Nice is entitled to summary judgment on this claim.

### B. *Monell* Claim.

The City may be liable for the illegal acts of its employees, but only under certain circumstances, where:

> [the employee's] action ... implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[;]
>
> ...
>
> [There is] official municipal policy of some nature[; or]
>
> ...
>
> [The] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy....

*Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690, 691 (1978).  A municipality is subject to liability for "only [those] deprivations [that are] visited pursuant to municipal 'custom' or 'policy'" under § 1983. *Okla. City v. Tuttle*, 471 U.S. 808, 818 (1985). "'[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or

acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" *Garner v. Memphis Police Dep't*. 8 F.3d 358, 363 (6th Cir. 1993) (quoting *Monell,* 436 U.S. at 694).

Herein, Williams offers only conclusory statements about the lack of *specific* training for those employed as SROs. Williams, however, offers no expert on the proper standard, nor offers any causal link between this lack of training and the alleged deprivation of T.W.'s constitutional rights. Given the facts of this matter, the Court finds that expert testimony would be required to establish the requisite training level. Moreover, even if the Court were to assume that Williams' conclusory statements were sufficient, she has still failed to demonstrate any causal connection. Accordingly, summary judgment in favor of the Defendants on the *Monell* claim is warranted.

### C. No Private Cause Of Action For Damages Under The Ohio Constitution.

The Court agrees with Defendants' that they are entitled to summary judgment on Williams's fourth and fifth claims for relief under the Ohio constitution. Defendants argue that they are entitled to summary judgment on Williams's fourth and fifth claims of relief because "the Ohio Constitution do[es] not give rise to a private cause of action for damages." Doc. 29, p. 17. Williams's claims under the Ohio constitution are that Defendants violated the constitution's guarantee of equal protection and prohibition of cruel and unusual punishment.

The Ohio Supreme Court has opined that "[t]he [Court] has refused to recognize a private cause of action for violations of the Ohio Constitution when it is determined that there are adequate remedies provided by statute or administrative process." *Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St.3d 252, 261, 594 N.E.2d 959 (1992). Moreover, "unless § 1983 is proven to be an inadequate remedy, Plaintiffs' Ohio

8

constitutional claims must be dismissed." *Id.*; s*ee also Ware v. Sanderson*, 2013 WL 587583 (N.D. Ohio 2013).

In this case, nothing suggests that Williams' § 1983 is inadequate.  Accordingly, there is no basis to allow her to proceed under the Ohio Constitution. Therefore, the Court concludes that Defendants' motion for summary judgment on Williams's fourth and fifth claims for relief is GRANTED.

### D.  Willful, Wanton and Reckless Conduct.

Williams' third claim for relief is not a stand-alone cause of action, but instead consists of allegations that Morgan's conduct was willful, wanton, and reckless.  In Ohio, municipal employees enjoy immunity from liability under R.C. 2744.03(A)(6) "unless the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." *Reed v. City of Cleveland*, 2006 WL 3861082 at *18 (N.D. Ohio, 2006) (citing *Cook v. City of Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814, 820 (Ohio Ct. App. 1995)).  To prevail on her underlying tort claims, Williams "must defeat the presumption of immunity." *Id*.

The Court adopts its qualified immunity analysis herein as it is equally applicable to a claim of state immunity.  The Court reaches the same conclusion here as well.  Morgan is not afforded immunity.

### E.  Williams' State Law Claims Of Assault, False Imprisonment, And Intentional Infliction Of Emotional Distress

#### 1.  Assault.

Once again, Nice is entitled to summary judgment on Williams's claim of assault, but Morgan is not entitled to summary judgment on this particular claim.  The Ohio Supreme Court maintains that "[a]n officer in making an arrest has the right to use such force as may be

9

necessary to overcome any resistance to the executions of his office, offered by the person to be arrested." *Drolesbaugh v. Hill*, 64 Ohio St. 257, 264 (1901). Sixth Circuit courts have thus held that claims for assault rise or fall with excessive force claims. *See Gill v, Kovach*, 729 F. Supp. 2d 925, 942 (N.D. Ohio, 2010) (quoting *Kepley v. Lantz*, 2007 WL 2085401 at *11 (N.D. Ohio, 2007)).

As this Court has concluded that a genuine issue of material fact exists pertaining to Williams's § 1983 claim that Morgan used excessive force, it stands that a genuine issue of material fact also exists as it relates to Williams's state law claim of assault. For these reasons, summary judgment is DENIED for Morgan and GRANTED for Nice.

### 2. False Imprisonment.

The Court agrees with Defendants that they are entitled to summary judgment on Williams's claim of false imprisonment. As Williams pointed out in her response to Defendants' motion, the essential elements for a false imprisonment claim are "intentional confine[ment] . . . without lawful justification." *Logsdon v. Hains*, 492 F.3d 334, 347 (6th Cir. 2007).

Herein, Morgan claims that T.W.'s conduct warranted her confinement. In her response brief, Williams offers the elements of this claim, but no factual analysis of any kind. Doc 20at 18. As Williams has wholly failed to offer any evidence or legal argument that T.W.'s confinement was unlawful, her claim must fail. For these reasons, Defendants' motion for summary judgment on Williams's false imprisonment claim is GRANTED.

### 3. Intentional Infliction of Emotional Distress.

Defendants are entitled to summary judgment on Williams's claim of intentional infliction of emotional distress. The elements of the common law tort of intentional infliction of emotional distress have previously been summarized by this court, as follows:

> To prevail on [a] claim for [intentional infliction of emotional distress], a plaintiff must prove the following four elements: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community"; (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."

*Gudin v. Western Reserve Psychiatric Hosp.*, 2001 WL 664389, at *5 (Ohio Ct. App. June 14, 2001) (citing *Pyle v. Pyle,* 11 Ohio App.3d 31, 34 (1983).

In this case, Williams offers no evidence through expert testimony or lay witnesses acquainted with T.W.'s emotional makeup to establish that she suffered from some "debilitating emotional distress" caused by Morgan's actions.  Moreover, Williams's claim of intentional infliction of emotional distress cannot pass the fourth prong of the test utilized by Ohio and Sixth Circuit courts.  Williams offers no evidence proving that T.W.'s mental anguish is serious and of a nature that no reasonable person could be expected to endure it.  Rather, she merely restates the 4-prong test in her response to Defendants' motion for summary judgment and her complaint merely states that T.W. was shamed and humiliated in front of others without providing evidence of distress.  For these reasons, Defendants' motion for summary judgment pertaining to Williams's claim of intentional infliction of emotional distress is GRANTED.

### F.  No Genuine Issue of Material Fact Over Conspiracy Claim.

The Court agrees with Defendants that they are entitled to summary judgment on Williams's seventh claim of relief for conspiracy.  Williams claims that Defendants were part of a conspiracy to cover up their wrongful conduct or lack of training and Morgan's alleged

11

wrongdoing. Williams does nothing to establish a conspiratorial agreement other than merely stating that such an agreement was implicitly or explicitly made. Also, Williams did not even address conspiracy in her response to Defendants' motion for summary judgment. For these reasons, Defendants' motion for summary judgment on Williams's seventh claim of relief for conspiracy is GRANTED.

## IV. CONCLUSION

Based upon the reasons stated herein, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATE: September 30, 2014        */s/ John R. Adams*_____
                                JUDGE JOHN R. ADAMS
                                UNITED STATES DISTRICT COURT